Otis W. BOGLE, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant–Appellee.

No. 92–6034.

United States Court of Appeals,
Sixth Circuit.

Argued May 6, 1993.

Decided July 6, 1993.

D.C. Daniel, Jr. (argued and briefed), Daniel, Burton & Thomas, Murfreesboro, TN, for plaintiff-appellant.

Michael L. Roden, Asst. U.S. Atty., Ernest W. Williams, U.S. Atty., Nashville, TN, Susan Kelm Story (argued and briefed), Mack A. Davis, Bruce Granger, Mary Ann Sloan, Holly A. Grimes, Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, GA, for defendant-appellee.

Before: KENNEDY and SILER, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Otis W. Bogle, appeals the decision of the district court affirming the decision of defendant-appellee, the Secretary of Health and Human Services, not to reopen a 1981 claim for social security disability benefits, and affirming the Secretary's denial of 1983 and 1987 claims for social security disability benefits. For the following reasons, we affirm.

## I.

Plaintiff has filed applications for social security benefits three times. The first was in November 1981, the second on July 12, 1983, and the third on July 27, 1987. The first claim was denied at all levels before the Secretary and plaintiff did not file an appeal of the district court's decision to affirm the Secretary to this court. The second application was denied at all levels and plaintiff's appeal to this court was dismissed for late notice of appeal. 791 F.2d 931. The third application filed on July 27, 1987 went to the appeals council which indicated that perhaps plaintiff's prior applications for disability benefits could be reopened under the *Samuels* case and remanded the case to the administrative law judge (ALJ) to reconsider these applications.

The ALJ determined that the first application (1981) was not covered by the *Samuels* case, but the second (1983) application was. He therefore reconsidered the July 12, 1983 application, which alleged a disability onset

date of December 23, 1980, and plaintiff's current application of July 27, 1987, which included a claim for supplemental security income benefits. The ALJ determined that plaintiff was not disabled as of December 23, 1980 due to a back impairment, but that he had become disabled as of January 18, 1989, when he had a heart attack.

After the appeals council denied an appeal and the decision became the final decision of the Secretary, plaintiff filed a complaint in the United States District Court for the Middle District of Tennessee. A magistrate issued a report and recommendation adopting the Secretary's position that plaintiff had become disabled only as of January 18, 1989. This opinion was adopted by the district court. Plaintiff has filed a timely appeal.

At the hearing on his most recent application for social security benefits, plaintiff was 54–years–old and had a 10th grade education, but later received a G.E.D. diploma. His past work consisted of ceiling insulator, custodian and school bus driver, assembly line worker, billboard worker, motel renovation painter, and motel furniture installer. Plaintiff last worked on December 22, 1980, when he was injured on the job while moving furniture. He underwent a lumbar laminectomy in October 1978 and reinjured his back in December 1980.

In July 1984, Dr. Snyder, plaintiff's treating physician, wrote a letter in support of plaintiff's claim of disability, stating that plaintiff was totally disabled due to his back impairment, but the Secretary rejected this finding of disability, finding that Dr. Snyder's opinion was conclusory in nature and conflicted with his own treatment notes and prior comments which indicated that although plaintiff could not perform his former work as a subcontractor, his condition did not prevent him from being able to perform all work. The Secretary noted that after 1984, plaintiff did not receive frequent medical treatment or follow-up care for his back. Between then and July 29, 1985, he visited a physician on only one occasion. Plaintiff returned to see Dr. Snyder on March 11, 1986, but did not seek any medical treatment for almost a year thereafter when he returned to see Dr. Snyder complaining of a small cyst

on his left index finger. He did not return to see Dr. Snyder until after filing his third application for disability in July 1987. In regard to this application, Dr. Snyder conducted an examination in which plaintiff displayed a decreased range of motion of the back, but had negative straight leg raising and normal motor and sensory examinations. X-ray studies showed no disc space narrowing. Dr. Snyder completed an assessment stating that plaintiff could walk, stand, or sit for only one hour at a time and could not lift any weight comfortably. He stated that plaintiff had been permanently and totally disabled since December 1980.

In considering this assessment, the ALJ noted that Dr. Snyder had not started treating plaintiff until July 1981. The ALJ, when weighing the evidence of Dr. Snyder, determined that Dr. Snyder had previously shown a willingness to aid Mr. Bogle's claim for disability when his own treatment notes and documentary comments failed to support his conclusory opinion of disability. Dr. Snyder had formerly stated that plaintiff was not capable of performing the heavy lifting of his past work as a subcontractor, but could perform light work. Dr. Snyder contradicted this former assessment by stating that plaintiff had been totally disabled since 1980. The ALJ also found that the evidence of record in its entirety failed to support the comments made by Dr. Snyder in August 1987 regarding the alleged severity of plaintiff's limitations of function. The ALJ noted that plaintiff had had a heart attack while laying shingles on a roof, which belied Dr. Snyder's assessment of total disability. Plaintiff had suffered a heart attack on January 18, 1989, and in August 1989, Dr. Maciol opined that plaintiff was totally disabled due to his heart condition. The ALJ determined that plaintiff had been under a disability since January 18, 1989 when he had the heart attack.

Plaintiff challenges this disability onset date, contending that he has been disabled since December 23, 1980, and arguing that his 1981 application for social security benefits should have been reopened.

## II.

We must first decide whether the district court erred in determining that it did not

have jurisdiction to review the Secretary's decision not to reopen its final decision regarding plaintiff's first application of disability of November 1981.

Plaintiff contends that this court has jurisdiction to review the Secretary's decision not to reopen its decision to deny plaintiff's 1981 application for social security benefits, because plaintiff has presented a colorable constitutional claim which allows judicial review of this prior claim.

█ Although a claimant may seek to have a determination of the Secretary reopened, it is within the Secretary's discretion whether or not to reopen the case. In the present case, the ALJ did not choose to reopen plaintiff's first application for disability benefits filed in November 1981. Under *Califano v. Sanders*, 430 U.S. 99, 107–08, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), when a prior decision is not reopened, this court has no jurisdiction to review the actions of the Secretary on the earlier claim in the absence of a colorable constitutional claim.

█ Plaintiff argues that he presents a colorable constitutional claim because he was denied procedural due process of the law under the Fifth Amendment when the Secretary applied incorrect law in deciding to deny plaintiff's 1981 application for social security benefits. This allegation does not rise to the level of a colorable constitutional claim. The standard applied by the ALJ was the one set out in the Secretary's regulations at the time he considered the case. At a later time, this standard was changed. Be this as it may, the standard applied by the ALJ when he issued his decision on October 22, 1982 was the appropriate standard to use at the time. The fact that the law may change following a

final decision by the Secretary does not rise to the level of a colorable constitutional claim.[1] *Richardson v. Bowen*, 807 F.2d 444, 446–47 (5th Cir.1987). Moreover, the Secretary's regulations provide that a change in the law is not good cause for reopening a prior decision. 20 C.F.R. § 404.989(b).

█ Also the Secretary may apply the doctrine of *res judicata* to bar an award of benefits for a period of disability for which a previous application for disability has previously been denied. *Wills v. Secretary of Health and Human Services*, 802 F.2d 870, 871 (6th Cir.1986). In the present case, the district court affirmed the Secretary's denial of benefits with regard to plaintiff's 1981 application and plaintiff did not pursue any further appeal to this court. Since there has been a previous determination of plaintiff's rights in regard to the 1981 application on the same facts and on the same issues, the ALJ properly applied the doctrine of *res judicata* in refusing to reopen the 1981 application. The district court is affirmed on this issue.

### III.

We must next decide whether the district court erred in concluding that substantial evidence supports the Secretary's determination that plaintiff was not disabled prior to January 18, 1989.[2]

█ This court has jurisdiction on appeal to review the Secretary's final decision regarding a denial of disability benefits pursuant to 42 U.S.C. § 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evi-

---

1. Plaintiff concedes that he does not fall in the *Samuels* class certified by this court in *Samuels v. Heckler*, 668 F.Supp. 656, 660–64 (W.D.Tenn. 1986) for his 1981 application.

2. In regard to this issue, the court must consider whether plaintiff was disabled for any time after October 22, 1982 (the date of the ALJ's decision with respect to the application filed in November 1981, which was not reopened) and up through March 31, 1983, the date plaintiff was last insured for Title II social security benefits. In regard to supplemental security income under Title XVI, the application for which was filed in

1987, the court must review the ALJ's finding that plaintiff was not disabled during the effective date of the Title XVI application filed in July 1987. A Title XVI application is effective for the month in which an individual is under a disability, but in no case earlier than the month in which the application is filed. 42 U.S.C. § 1382(c)(6). Thus, for plaintiff's Title XVI application, the relevant time period is from July 27, 1987, the filing date of the SSI application, to January 18, 1989, the onset date as determined by the ALJ.

dence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In determining whether the Secretary's factual findings are supported by substantial evidence, this court must examine the evidence in the record "taken as a whole." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), and "'must take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir.1978). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).

■ The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)(1)(A). If the claimant is working, benefits are automatically denied. 20 C.F.R. § 404.1520(b). If a claimant is not found to have an impairment that significantly limits his ability to work (a severe impairment), then he is not disabled. 20 C.F.R. § 404.1520(c). Since the ALJ in the present case found that Mr. Bogle had not worked since December 22, 1980 and that the medical evidence establishes that he has a severe impairment due to status-post two laminectomies and a history of a heart attack with coronary artery bypass surgery, further inquiry was necessary. If a claimant is not working and has a severe impairment, it must be determined whether he suffers from one of the "listed" impairments. 20 C.F.R. § 404.1520(d). If so, benefits are owing without further inquiry. In the present case, the ALJ found that Mr. Bogle did not suffer from one of the listed impairments. In such a case, assuming the individual has previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. § 404.1520(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a *prima facie* case of disability.

*Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir.1978).

In the present case, the ALJ found that plaintiff was capable of returning to his past relevant work because plaintiff had the residual functional capacity to perform work-related activities except for work involving heavy lifting of more than 20 pounds. Because plaintiff's past relevant work as a custodian/school bus driver did not require the performance of work-related activities precluded by this limitation, the ALJ concluded that plaintiff's impairments would not have prevented him from performing his past relevant work prior to January 18, 1989 when he had a heart attack. We must decide whether this decision was supported by substantial evidence.

A review of the record indicates that plaintiff apparently did quite well following his 1981 laminectomy with respect to his low back pain and although he complained of some pain, it was noted by his treating physician, Dr. Snyder, a Nashville orthopedic surgeon, that the clinical findings revealed a fairly stable back with good range of motion and no pain in the legs. It was also noted that by January 1983, plaintiff's back pain had diminished because of his participation in flexion exercises. In March 1983, the motion study showed improvement and straight leg raisings were negative. Dr. Snyder continued to recommend that plaintiff increase his activities. Plaintiff was placed on medication for inflammation and back pain, and by June 1983, it seemed to be working. The final report from Dr. Snyder with respect to plaintiff's initial application for disability benefits was July 24, 1984 and plaintiff's physical examination had not changed since the prior examinations. Giving no clinical basis, Dr. Snyder concluded that plaintiff remained permanently and totally disabled as a result of low back pains, secondary to a ruptured disc.

■ We believe that the ALJ properly discounted Dr. Snyder's opinion of disability. This court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported

by sufficient clinical findings and are consistent with the evidence. *See Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir.1990). In *Hall v. Bowen,* 837 F.2d 272 (6th Cir.1988), this court held that the Secretary may reject a treating physician's opinion if good reasons are identified for not accepting it. In the present case, Dr. Snyder's treating records revealed that plaintiff's condition remained essentially unchanged through 1987. In September 1982, Dr. Snyder stated that plaintiff could go hunting. In November 1982, Dr. Snyder indicated that plaintiff engaged in extremely heavy work installing carpeting in motel rooms and that there was no light work with infrequent lifting available to plaintiff. In January 1984, Dr. Snyder reported that he had spoken with plaintiff's attorney about the social security guidelines and that plaintiff "does meet the guidelines for his occupation, but not as far as any occupation." We agree with the Secretary that this statement indicates that while Dr. Snyder believed that plaintiff could no longer perform his work as a carpet installer, a job which a vocational expert had identified as heavy work, he did not consider plaintiff to be totally disabled from all work. This assessment is also supported by Dr. Snyder's May 1985 assertion that it would be in plaintiff's best interest to be retrained for other work. All of these statements contradict Dr. Snyder's February and August 1987 declarations that plaintiff had been totally disabled since 1980. Because Dr. Snyder provided conflicting opinions throughout the time period at issue, we believe that the Secretary was not bound by Dr. Snyder's opinion that plaintiff had been disabled since December 1980. *See Hardaway v. Secretary of Health and Human Services,* 823 F.2d 922, 927 (6th Cir. 1987).

There is also substantial evidence regarding the Secretary's determination that plaintiff's subjective complaints of pain did not create a disabling condition. Under *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.1986), in evaluating a claimant's subjective complaints of pain, the Secretary determines whether the claimant has an underlying condition and if so, whether either objective evidence supports the complaints, or the complaints are reasonable in light of objectively determined medical conditions.

In the present case, the ALJ's conclusion that the objective evidence failed to support a finding that plaintiff experienced any pain or other symptomatology of a disabling level of severity prior to January 18, 1989 is supported by substantial evidence. In January 1983, Dr. Snyder reported that plaintiff's condition was improving and that while he had pain in the morning, the pain was "almost completely gone by lunch time." Dr. Snyder repeated the statement in August 1983 and in October 1984. Dr. Snyder described plaintiff's pain as "only a low grade aching pain." Dr. Snyder's notes indicate that plaintiff told him in March 1986 that he might want to do some work with antiques and was considering asking the insurance company paying his work disability benefits for a lump sum so that he could "start an seek a new life." There is ample evidence in the record that plaintiff could perform a variety of activities during the time periods at issue including hunting, fishing, and walking on a daily basis. In fact, plaintiff had his heart attack while he was laying shingles on a roof. The ALJ may consider the household and social activities in evaluating complaints of disabling pain or other symptoms. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 231 (6th Cir.1990).

The record reveals that the ALJ carefully reviewed all the clinical findings and medical test results, including the opinions of Dr. Gavigan and Dr. Snyder. He rejected plaintiff's pain testimony based on his finding that plaintiff had been a fairly active person, engaging in activities such as hunting, fishing, grocery shopping, driving his automobile, and laying shingles. The ALJ accounted for his refusal to credit Dr. Snyder's determination of disability, noting such things as that the medical evidence at the time revealed that straight leg raising, a neurological examination, and strength tests were either normal or showed improvement. There was even one physician, Dr. Gavigan of Nashville, who during the early years, thought that plaintiff could lift up to 50

pounds. For these reasons, we believe there was substantial evidence to support the Secretary's finding that plaintiff could return to his past relevant work. Plaintiff testified that his past relevant work included driving a school bus and performing custodial duties at a school for two years. The vocational expert testified that this work required light exertion and was semi-skilled. The vocational expert also testified that there were jobs existing in significant numbers in the national economy which an individual with plaintiff's limitations could perform. Because plaintiff retained the ability to perform his past relevant work prior to January 18, 1989, he was not disabled prior to that date pursuant to 29 C.F.R. §§ 404.1520(e), 416.920(e). Accordingly, the decision of the Secretary is hereby AFFIRMED.